UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHARLES BRUCE WHITE,

         Plaintiff,

v.

ANTHONY PETER GOVORCHIN et al.,

         Defendants.
_____/

Case No. 2:18-cv-138

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues Peter Govorchin, who is employed as an attorney for the Michigan Attorney General's office, Social Worker Camille Sliger, and Michigan Parole Board Chairman Michael C. Eagen.

Plaintiff alleges that on March 30, 2018, Defendant Govorchin committed fraud by altering a state court judgment from case number 90-002252-02-FH in the Third Circuit Judicial Court, and filing it as an exhibit to a pleading in case number 18-0239-AH in the Gratiot County Circuit Court. On June 29, 2018, Third Circuit Judge Robert Colombo issued an opinion finding that Defendant Govorchin had altered the judgment.

Plaintiff alleges that on January 10, 2018, Defendant Eagen wrote that Plaintiff was serving 1-5 years for prison escape and no programs or psychological counseling was recommended. On June 8, 2018, Defendant Eagen ordered a psychological evaluation on Plaintiff by Defendant Sliger. Plaintiff claims that Defendant Sliger had no legal authority to perform the evaluation. Defendant Sliger subsequently notified Defendant Eagan that Plaintiff had refused to participate in "MSOP," a sex offender program. On July 17, 2018, Defendant Eagen wrote in a parole notice that Plaintiff was serving a sentence for being a sex offender, that he was serving a sentence for refusing to register as a sex offender, and that he had refused the programming requirement for sex offenders. Plaintiff states that this is untrue, that he completed MSOP in 1987, and that the Parole Board did not require or recommend MSOP after January 9, 2018. Plaintiff also states that NCF does not have a MSOP program and that he is currently incarcerated on a prison break conviction. However, this Court takes judicial notice of the information provided by a search of the Michigan Department of Corrections (MDOC) Offender Tracking System (OTIS) website with regard to Plaintiff and notes that, in addition to his sentence for prison escape, Plaintiff is also

serving sentences of 4 to 40 years imprisonment for four counts of first-degree criminal sexual conduct. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber =177157.

Plaintiff states that Defendants' conduct violates his equal protection and due process rights. Plaintiff seeks reimbursement for legal costs, and a copy of his state court records.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's complaint fails to specifically state the harm he has suffered as a result of Defendants' conduct. However, it appears as if he is claiming that their actions have resulted in a denial of his eligibility for parole. To establish a procedural due process violation for the denial of parole, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).

Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

As noted above, Plaintiff is serving a prison term of 4 to 40 years for four criminal sexual conduct convictions. Until Plaintiff has served the maximum sentence for his criminal sexual conduct convictions, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

To the extent that Plaintiff is claiming that Defendant Govorchin placed false information in his state court record, the Court notes that mere retention of inaccurate information in a prisoner's file does not amount to a constitutional violation. *Carson v. Little*, No. 88-1505, 1989 WL 40171 (6th Cir. Apr. 18, 1989) (unpublished) (citing *Pruett v. Levi*, 622 F.2d 256, 258 (6th

5

Cir. 1980) (per curiam)). Although an inmate has a limited right to have erroneous information expunged from his prison file, such a right exists only where an inmate alleges that the information is actually in his file, that it is false, and that the information is relied on to a constitutionally significant degree. *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695, at \*\*1 (6th Cir. March 14, 1986) (unpublished) (citing *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979)); *U.S. ex rel Silverman v. Commonwealth of Pennsylvania*, 527 F. Supp. 742 (D.C. Pa. 1981), *aff'd*, 707 F.2d 1395 (3rd Cir. 1983); and *Pruett*, 622 F.2d at 258). It is not necessary that an inmate wait until an adverse decision has actually been rendered, so long as he alleges that the false information is such that prison officials are likely to rely on it. *Paine*, 595 F.2d at 201; *U.S. ex rel Silverman*, 527 F. Supp. at 745. In this case, Plaintiff merely makes a conclusory assertion that Defendant Govorchin falsified information. Plaintiff does not allege any facts showing that the false information is likely to be used as the basis for an adverse decision against Plaintiff. Moreover, to the extent that Plaintiff is claiming that Defendant Govorchin's conduct affected his ability to be paroled, a prisoner does not have a federal right to parole, so any reliance on false information in Plaintiff's record to deny parole would not be constitutionally significant. *Greenholtz*, 442 U.S. at 7. Finally, the Court notes that because Plaintiff's claim against Defendant Govorchin consists solely of conclusory assertions of unconstitutional conduct without specific factual allegations, it fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at, 678-79; *Twombly*, 550 U.S. at 555. That is, Plaintiff merely alleges that Defendant Govorchin altered a state court judgment without alleging what was altered, what effect, if any, it had on the outcome in case number 18-0239-AH, and how such alteration violated Plaintiff's rights.

Plaintiff makes a conclusory assertion that Defendants violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to

any person within its jurisdiction the equal protection of the laws." U.S. Const., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz*, 442 U.S. at 7; *Sweeton*, 27 F.3d at, 1164-65. In addition, prisoners are not a suspect class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class). Specifically, convicted sex offenders are not a suspect class and, therefore, any laws or classifications that they may be subject to are reviewed under the rational basis test. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999). Thus, in order to establish an equal protection violation, Plaintiff must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate governmental purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843.

Plaintiffs' equal protection claim fails because the classification survives rational basis review.

7

> [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners).

In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-26 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting Mich. Comp. Laws § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or

aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

In addition, Michigan's statutory scheme furthers the rights of victims, *see* Mich. Comp. Laws § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights). Finally, Michigan's parole statutes also include economic considerations, which are a legitimate government interest. *See Franciosi v. Mich. Parole Bd.*, 586 N.W.2d 542, 546 (Mich. Ct. App. 1998) (holding that Mich. Comp. Laws §791.236(6), which prohibited attorneys from representing prisoners at parole release hearings, was rationally related to legitimate economic considerations), *aff'd*, 604 N.W.2d 675 (Mich. 2000).

There are numerous factors and considerations used by the Michigan Parole Board in determining whether parole is appropriate. Consideration of the nature of the particular offenses of an inmate is clearly rational and not arbitrary. Moreover, the Supreme Court has recognized that rational basis scrutiny is not properly applied to employment decisions and other discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). Parole considerations are the type of discretionary decisions discussed in *Engquist* that typically are "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.*

9

Discretion to grant parole is squarely lodged with the Parole Board. *See Sweeton*, 27 F.3d at 1164-65 (noting the broad authority of the Michigan Parole Board to make discretionary decisions). Applying *Engquist*, even an arbitrary parole decision would not violate Plaintiff's equal protection rights. Therefore, any equal protection claim being asserted by Plaintiff is properly dismissed.

### III. Pending motions

Plaintiff has filed a letter request seeking to voluntarily dismiss this action if he can do so without paying the filing fee (ECF No. 6). However, as noted in the order granting *in forma pauperis* in this case, Plaintiff shall remain responsible for payment of the filing fee regardless of whether the case is voluntarily dismissed by Plaintiff. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997). Therefore, Plaintiff's request to dismiss the case without the filing fee requirement is properly denied.

Plaintiff has also filed a motion seeking to supplement his complaint, for appointment of counsel, and for copies of his complaint (ECF No. 4). In his motion, Plaintiff seeks to add Warden Jack Kowalski and Law Librarian L. Supnick as defendants, asserting that they improperly denied him copies of his complaint for service. However, since service was never ordered in this case, the denial of copies did not prejudice Plaintiff. Plaintiff's request for copies lacks merit for the same reason. Finally, Plaintiff's motion for appointment of counsel is moot in light of the Court's conclusion that his complaint is properly dismissed for lack of merit.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Govorchin, Sliger, and Eagen will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

Finally, Plaintiff's pending motion and letter request (ECF Nos. 4 and 6) are denied.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 17, 2018                         /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE